**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DONALD WHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:20 CV 351 DDN |
| | ) | |
| MICHELLE BUCKNER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court is the petition of Missouri state prisoner Donald White for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Both petitioner and respondent have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c).  For the reasons set forth below, the petition is denied.

## BACKGROUND

### *The underlying convictions*

Petitioner White was convicted in 2014 by a jury in the Circuit Court of the City of St. Louis of first-degree murder and armed criminal action.  Petitioner was sentenced to life imprisonment without the possibility of parole for first degree murder and thirty years for armed criminal action, sentences the Circuit Court ordered to be served consecutively.

The Missouri Court of Appeals, in its decision affirming the lower court's denial of post-conviction relief, described the facts of this case as follows:

> A.Y. (Victim) was murdered on August 23, 2011. At the time of the murder co-defendant Leon Moss had charges pending for second-degree domestic assault and armed criminal action for acts he committed against Victim. Victim was prepared to testify at this trial. Prior to the murder, Moss, in the presence of a group of associates, discussed the murder of Victim. [Petitioner] told Moss that he knew someone who could do the job, and later said that co-defendant Christopher Spates could commit the murder.

Raymond Jones was introduced to co-defendant Spates. Jones could identify Victim, and, according to Moss, Jones would take Spates to "do what you got to do."

In the evening of August 23, 2011, Spates and Jones followed Victim and waited for her to pull into a parking lot, where the murder occurred. Video surveillance identified the vehicle they were driving, and eyewitness testimony indicated Spates was the shooter. Victim died immediately from three shots to the head.

Following the murder, Moss and [petitioner] discussed that Spates had yet to be paid for the hit. Moss was seen handing [petitioner] a stack of money wrapped in a rubber band. [Petitioner] said the money was for the murder of Victim. [Petitioner] was seen separating the money before he arrived at Spates's apartment, and handing Spates the cash. Later, Moss indicated he wanted the murder weapon disposed of. [Petitioner] went back to Spates's apartment, convinced Spates to give him the gun, broke it down, and threw it in a river.

[Petitioner] was tried by a jury alongside co-defendants Spates and Moss. He was found guilty and sentenced to consecutive terms of life without probation or parole for murder and thirty years for armed criminal action. On direct appeal this Court affirmed the convictions and sentences. *State v. White*, 507 S.W.3d 33 (Mo. App. E.D. 2016). [Petitioner] filed a motion to vacate, set aside, or correct judgment and sentence. The motion court denied [Petitioner]'s motion without an evidentiary hearing. The present appeal follows.

(Doc. 10-22 at 1-3); *White v. State*, 567 S.W.3d 644 (Mo. Ct. App. 2018).

### *Petitioner's direct appeal*

Petitioner directly appealed his convictions and sentences to the Missouri Court of Appeals. Petitioner asserted the following 10 violations of the federal Constitution:

(1)     The Circuit Court erred in allowing witness Devonta Gomillia to testify regarding out-of-court statements made by petitioner's co-defendant Christopher Spates.

(2)     The Circuit Court abused its discretion in allowing witness Darryl Clemons to testify regarding out-of-court statements made by petitioner's co-defendant Leon Moss.

2

(3)     The Circuit Court abused its discretion in denying petitioner's motion to sever his trial from that of his co-defendants Christopher Spates and Leon Moss.

(4)     The Circuit Court erred in denying petitioner's motion to dismiss charges based on violations of the Interstate Agreement on Detainers (IAD).

(5)     The Circuit Court erred in limiting the cross-examination of Mr. Clemons regarding his prior conduct in which he threw a woman out of a moving car.

(6)     The Circuit Court erred in allowing testimony that indicated petitioner was involved in drug activity and overruling petitioner's Motion for Mistrial after said testimony was given.

(7)     The Circuit Court erred in denying petitioner's motion for a mistrial after testimony was adduced regarding his prior imprisonment.

(8)     The Circuit Court erred in failing to strike the comments of the prosecutor, order a new trial, or properly instruct the jury when the prosecutor, in her closing argument, referred to petitioner's failure to deny that he was an associate of Mr. Clemons.

(9)     The Circuit Court erred in allowing testimony by Officer Kaiser regarding out-of-court statements made to him by Mr. Gomillia.

(10)    The Circuit Court refused to allow petitioner's counsel access to federal case files concerning Mr. Clemons and probation files concerning Mr. Gomillia.

The Missouri Court of Appeals affirmed. *State of Missouri v. White*, 507 S.W.3d 33 (Mo. Ct. App. 2016). In its unpublished explanatory opinion, the Missouri Court of Appeals ruled against each of petitioner's points on its merits. (Doc. 10-13.)

### *Motion for post-conviction relief*

On March 28, 2017, petitioner filed a motion for post-conviction relief (PCR) under Missouri Supreme Court Rule 29.15. In it he states eight of grounds for relief:

(1)     Trial counsel rendered constitutionally ineffective assistance by failing to properly and completely object or preserve in petitioner's Motion for New Trial the trial

court's error in admitting Mr. Gomillia's testimony regarding the hearsay statements of co-defendant Spates.

(2)     Trial counsel rendered constitutionally ineffective assistance by failing to object, move to strike, request a mistrial, or preserve in petitioner's Motion for New Trial the Assistant Circuit Attorney's improper closing argument commenting on petitioner's right not to testify.

(3)     Trial counsel rendered constitutionally ineffective assistance by failing to effectively draft, litigate and present evidence regarding petitioner's detainer and status relative to his claims under the Interstate Agreement on Detainers (IAD).

(4)     Trial counsel rendered constitutionally ineffective assistance by advising and facilitating petitioner's "consenting" to being returned to federal custody on or about March 19, 2013, as this violated petitioner's rights under provisions of the IAD.

(5)     Trial counsel rendered constitutionally ineffective assistance by failing to effectively plead, litigate and preserve petitioner's motion to sever defendants for separate trials.

(6)     Trial counsel rendered constitutionally ineffective assistance because the cumulative errors committed by trial counsel are sufficient in their egregiousness to warrant relief.

(7)     Appellate counsel rendered constitutionally ineffective assistance by failing to properly plead and brief the issue and facts relating to the trial court's error in failing to sever petitioner's case from that of his co-defendants.

(8)     Appellate counsel rendered constitutionally ineffective counsel by failing to properly plead and brief the issue and facts relating to the improper admission of co-defendant Moss's hearsay statements to Mr. Clemons regarding the purported planning of the crimes charged.

(Doc. 10-17.)

The Circuit Court denied relief. (Doc. 10-18 at 3-12.) Petitioner appealed to the Missouri Court of Appeals.

*Post-conviction relief appeal*

On his PCR appeal, petitioner raised the following five grounds:

(1)     The motion court erred in denying petitioner's Rule 29.15 motion for post-conviction relief on grounds that his trial counsel was ineffective for failing to object to and properly preserve the trial court's error in admitting the hearsay testimony of Mr. Gomillia concerning statements he allegedly heard from co-defendant Spates regarding the murder of the victim.

(2)     The motion court erred in denying petitioner's PCR motion on the ground that his trial counsel was ineffective for failing to effectively draft, litigate and present evidence regarding petitioner's detainer and status under the IAD.

(3)     The motion court erred in denying petitioner's PCR motion on the ground that his trial counsel failed to litigate and preserve his Motion to Sever Defendants.

(4)     The motion court erred in denying petitioner's PCR motion on the ground that his appellate counsel failed to effectively brief his Motion to Sever Defendants.

(5)     The motion court erred in denying petitioner's PCR motion on the ground that his appellate counsel was ineffective for failing to properly brief and plead facts relating to the improper admission of co-defendant Moss' hearsay statement to Mr. Clemons regarding the purported planning of the crimes charged.  (Doc. 10-19.)

The Missouri Court of Appeals affirmed the denial of post-conviction relief.  *White v. State of Missouri*, 567 S.W.3d 644 (Mo. Ct. App. 2018) (Doc. 10-22 at 6.).

## PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 asserts the following eight grounds:

(1)     Trial counsel rendered constitutionally ineffective assistance because they
         failed to object adequately to Mr. Gomillia's hearsay testimony regarding

5

statements he allegedly heard from petitioner's co-defendant Christopher Spates regarding the murder-for-hire of the victim.

(2)  Trial counsel rendered constitutionally ineffective assistance because they failed to adequately assert and present petitioner's claim based on the denial of rights protected by the IAD.

(3)  At trial, the Circuit Court found that no detainer occurred prior to trial and denied petitioner's motion to dismiss the charges against him for violation of the IAD.

(4)  At trial, the Circuit Court denied petitioner's request for a trial separate from that of his co-defendants.

(5)  At trial, the Circuit Court overruled defense counsel's objection to testimony by Mr. Gomillia regarding out-of-court statements purportedly made by Mr. Spates implicating petitioner in victim's murder.

(6)  At trial, the Circuit Court refused to allow defense counsel to cross-examine Mr. Clemons.

(7)  At trial, the Circuit Court did not declare a mistrial or provide the jury with an immediate remedial instruction after the prosecuting attorney commented to the jury on petitioner's failure to testify.

(8)  At trial, the Circuit Court did not allow defense counsel access to federal investigation files concerning Mr. Clemons and probation files concerning Mr. Gomillia.

(Doc. 1 at 6-17.)

Respondent argues that Ground Four is procedurally barred to the extent it expands on the claim that petitioner presented in state court. (Doc. 10 at 13.) Respondent also argues that Ground Five is procedurally barred because of petitioner's failure to preserve the claim at trial. (*Id.* at 14.) On the remaining grounds, respondent argues that this Court should leave the reasonable decision of the Missouri Court of Appeals undisturbed. (*Id.* at 6-17.)

## EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas petitions under 28 U.S.C. § 2254.  *See* 28 U.S.C. § 2254(b)(1).  A prisoner has not exhausted his state law remedies if he "has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c). An appeal to an intermediate state appellate court exhausts remedies in Missouri, permitting federal habeas review. *See* Mo. Sup. Ct. R. 83.04; *Randolph v. Kemna*, 276 F.3d 401, 404 (8th Cir. 2002) ("Rule 83.04 ... makes clear that Missouri does not consider a petitioner who bypasses its supreme court in favor of federal habeas review to have denied the State its rightful opportunity to resolve federal constitutional claims.").

To preserve issues for federal habeas review, a state prisoner must fairly present his claims to the state courts during the trial court proceedings or post-conviction proceedings and on appeal from the denial of relief in both proceedings. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a denied claim in a post-conviction appeal is an abandonment of the claim and federal habeas review of the claim is barred. *Id*. at 1150; *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A petitioner may overcome the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if failure to review the claim would result in a fundamental miscarriage of justice. *Id* at 750.

Therefore, a prisoner "forfeit[s] his right to present his federal claim . . . unless he can meet strict cause and prejudice or actual innocence standards." *Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007). Generally, to establish cause for a procedural default, petitioner must "show that some objective factor external to the defense impeded" his "efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. To establish actual prejudice, petitioner "must show that the errors of which he complains worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999).

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas relief can be granted by a federal court on a claim that has been decided on the merits by a state court only when that adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of   the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established law if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or…decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Thaler v. Haynes*, 130 S. Ct. 1171, 1174 (2010).  A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] [C]ourt's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* This standard is difficult to meet, because habeas corpus "is a guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

A state court's findings of fact are presumed to be correct.  *See* 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010).  A federal court's review of factual findings is generally limited to the record before the state court that adjudicated the claim on the merits.  *See Cullin v. Pinholster*, 563 U.S. 170, 181 (2011).  Clear and convincing evidence that a state court's findings of fact lacked evidentiary support is required for a federal court to make a correction.  *See* 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

### DISCUSSION

#### *Constitutionally ineffective assistance of counsel*

In Grounds One and Two petitioner argues trial counsel rendered constitutionally ineffective assistance for trial counsel's failure to adequately object to the admission of Mr. Gomillia's testimony and failure to adequately present a claim that petitioner had been detained in violation of the IAD. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. The right to counsel is "the right to effective assistance of counsel." *McCann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Under *Strickland*, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

In order to prevail on a Sixth Amendment claim, a petitioner must prove that (1) counsel's representation "fell below an objective standard of reasonableness," measured under "prevailing professional norms," *id.* at 688, and (2) "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The performance and prejudice prongs of *Strickland* can be addressed in either order, and "[if] it is easier to dispose of a ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." *Id.* at 697.

#### Ground One

In Ground One, petitioner argues that he was deprived of the right to effective assistance of trial counsel because counsel failed to properly object to the testimony of Mr. Gomillia regarding statements made by petitioner's co-defendant Christopher Spates in violation of the Sixth and Fourteenth Amendment. Petitioner raised this claim in his Rule 29.15 post-conviction motion, and the motion court found the claim was without merit.

Petitioner appealed to the Missouri Court of Appeals, which affirmed the Circuit Court's holding.

The trial transcript indicates that Mr. Gomillia testified that Mr. Spates told him that he received payment for the killing of the victim and that petitioner was the one who made that  payment. The trial transcript also indicates that the jury was given a limiting instruction to only consider the testimony in question when determining the guilt of co-defendant Spates and not that of petitioner. (Doc. 10-2 at 1550-51.)

The Missouri Circuit Court stated the following regarding this matter upon petitioner's Rule 29.15 appeal:

> [Petitioner]'s first claim is that his trial counsel was ineffective for failing to properly object to Davonta Gomillia's testimony regarding the hearsay statements of co-defendant Spates and for failing to preserve for appeal the trial court's error in admitting Davonta Gomillia's testimony.
>
> Failure to object does not rise to the level of ineffective assistance of counsel unless movant has suffered a substantial deprivation of the right to a fair trial. *Johnson v. State*, 330 S.W. 3d 132, 139 (Mo. App. W.D. 2010); *Williams v. State*, 783 S.W. 2d 457 (Mo. App. 1990). Improperly admitted evidence is not prejudicial when other evidence before the court establishes the same facts. *Elliot v. State*, 272 S.W. 3d 924, 926 (Mo. App. S.D. 2009).
>
> The Court finds [petitioner]'s first part of the claim, regarding a failure to properly object, is without merit. The Court gave a limiting instruction, and there was substantial other evidence in the case regarding [petitioner]'s involvement in arranging the murder and the payment of money from co-defendant Moss to co-defendant Spates, and particularly through the testimony of Darryl Clemons. [Petitioner] therefore suffered no prejudice.
>
> The Court further finds the claim that counsel failed to preserve the issue for appeal is without merit. The review of ineffective assistance of counsel is limited to consideration of alleged errors which denied movant a fair trial. Therefore, a claim that counsel failed to adequately preserve issue for appeal is not cognizable. *Johnson v. State*, 283 S.W. 3d 279, 282 (Mo. App. S.D. 2009); *State v. Baker*, 850 S.W. 2d 944, 950 (Mo. App. E.D. 1993); *Strong v. State*, 263 S.W. 3d 636, 646 (Mo. banc 2008).

(Doc. 10-18 at 5-6.) Petitioner appealed. On appeal, the Missouri Court of Appeals stated the following:

> Movant alleges multiple points which this Court previously addressed on his direct appeal. Movant alleges that these issues were not properly

objected to or otherwise not correctly preserved for review. However, this Court reviewed these claims of error either ex gratia or as preserved error, and held that they were without merit.

When a court reviews and rejects a movant's argument on direct appeal, even if *ex gratia*, a movant cannot then successfully argue ineffective assistance of the same alleged error in post- conviction proceedings. *Moss v. State*, 540 S.W.3d 427, 432 (Mo. App. E.D. 2018). Counsel will not be found ineffective for failing to preserve a claim that has no merit. *State v. Phillips*, 940 S.W.2d 512, 524 (Mo. banc 1997). Because this Court has already determined the alleged errors to be without merit, they could not have affected the outcome of trial. Accordingly, points one through four are denied.

(Doc. 10-22 at 3-4.) (footnotes omitted.)

Both the Circuit Court and the Missouri Court of Appeals rejected petitioner's ineffective assistance of counsel claim because it had already been determined the alleged errors of counsel were without merit, and a meritless error, the court reasoned, could not have affected the outcome of petitioner's trial. The Circuit Court, in its ruling on petitioner's motion for post-conviction relief, held that petitioner suffered no prejudice, an essential element of a claim of ineffective counsel under *Strickland*. The court reasoned that, had petitioner been able to exclude the testimony from Mr. Gomillia regarding co-defendant Spates' implication of defendant, there would have been no material difference in the outcome of the case, because there were several other pieces of evidence that connected petitioner to the murder of the victim. (Doc. 10-18 at 5-6.) In neither petitioner's petition for a writ of habeas corpus nor his traverse did he state how he was prejudiced by the admission of Mr. Gomillia's testimony.

The state courts' decisions on this ground were reasonable applications of federal law based upon a clearly established factual record.

Accordingly, Ground One is without merit.

## Ground Two

In Ground Two, petitioner argues that he was deprived of the right to effective assistance of trial counsel because trial counsel failed to properly present claims based on the denial of rights protected by the IAD. Petitioner raised this claim in his Rule 29.15 post-

conviction motion and the Circuit Court found this claim was without merit. Petitioner appealed to the Missouri Court of Appeals, which affirmed. Petitioner now alleges that trial counsel rendered ineffective assistance at trial because they failed to stipulate the following facts:

> (1) Federal law enforcement officials charged with his custody accepted and acted upon the warrant issued by the state prosecutor in St. Louis as a detainer, (2) the transfer of [petitioner] from the Jennings jail to the St. Louis jail by St. Louis homicide detectives rather than federal marshals was extraordinary and intended to thwart continuous detention in federal custody, (3) the transfer to state custody after federal sentencing occurred only because the federal government honored the state warrant as a detainer, (4) absent a detainer the federal marshals would have transferred [petitioner] to a federal prison after sentencing in the United States District Court rather than leave him in local jails, and (5) [petitioner] thus remained a federal prisoner in state custody after a detainer was filed against him for more than 120 days without being brought to trial.

(Doc. 19 at 25-26.)

The Missouri Court of Appeals made the following statements regarding the Circuit Court's finding that no violation of the IAD took place:

> The IAD, codified in Missouri at Section 217.490 RSMo., authorizes a state to secure custody of a prisoner against whom it has lodged a detainer and who is serving a term of imprisonment in another state, for disposition of the charges against him in the state. Section 217.490, Art. IV(1); *State v. Davis*, 210 S.W.3d 229, 235 (Mo. App. W.D. 2006). If the state chooses to exercise its right, trial must be commenced within 120 days of the prisoner's arrival in the state. Section 217.490, Art. IV(3); *Alabama v. Bozeman*, 533 U.S. 146, 151 (2001); *Davis*, 210 S.W.3d at 235.
>
> The IAD also contains an "anti-shuttling" provision. That provision requires that when an individual who is serving a term of imprisonment in one jurisdiction is removed to another jurisdiction pursuant to a detainer, he must be tried in that jurisdiction before being returned to the original place of imprisonment; if he is not, the indictment or other charging document "shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." Section 217.490, Art. IV(5); *Bozeman*, 533 U.S. at 148-54; *State v. Robertson*, 182 S.W.3d 747, 753 (Mo. App. W.D. 2006).
>
> [Petitioner] contends that the State violated both the 120-day

12

requirement and the anti- shuttling provision.   [Petitioner]'s claim is premised on his assertion that the warrant served in this case on January 26, 2012, constituted a detainer under the IAD.  Hence, he argues, because a detainer had been filed when he arrived in state custody on June 6, 2012, the subsequent year he spent in custody without trial violated the 120-day requirement.  He further contends that his return to federal custody in August of 2013, prior to trial in this case, violated the anti-shuttling provision. [Petitioner]'s claim is without merit.

(Doc. 10-13 at 2-3.) (footnotes omitted.) Later the Missouri Court of Appeals made the following conclusions on this claim:

For a prisoner to invoke the provisions of the IAD, a detainer must have been lodged against him.  *State v. Morrison*, 364 S.W.3d 779, 785 (Mo. App. W.D. 2012); *Dillard v. State*, 931 S.W.2d 157, 166 (Mo. App. W.D. 1996) (noting that the IAD requires the existence of a detainer filed by one state against a prisoner being held in another).  "'A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent.'"  *Morrison*, 364 S.W.3d at 784 (quoting *Carchman v. Nash*, 473 U.S. 716, 719 (1985)).  Stated similarly, a detainer is "a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Bozeman*, 533 U.S. at 148.   The IAD expressly requires the filing of a detainer.  Section 217.490, Art. IV(1);  *Morrison*, 364 S.W.3d at 785.  Mere notice or knowledge of a warrant, by itself, does not constitute a detainer. *See Greene v. State*, 332 S.W.3d 239, 245 (Mo. App. W.D. 2010).  Because no detainer was filed in January of 2012, defendant cannot invoke the provisions of the IAD as of that time, and his entire argument fails.

[Petitioner]'s argument suffers from several other fatal flaws.  Even if the warrant constituted a detainer, defendant still cannot invoke the protections of the IAD as he wishes.  The IAD only applies to prisoners incarcerated in another jurisdiction who are subject to detainers originating in Missouri.  Section 217.490, Art. IV(1); *Lancaster v. Stubblefield*, 985 S.W.2d 854, 856 (Mo. App. E.D. 1998).  And here, [petitioner] was not incarcerated in another jurisdiction until July of 2013.    Although [petitioner]was sentenced in his federal case in June of 2012, he remained in state custody at the St. Louis City Justice Center, as a pre-trial detainee. He was not taken into federal custody and transferred to the federal Bureau of Prisons facility in Memphis, Tennessee, until July 29, 2013.  *See United States v. Taylor*, 173 F.3d 538, 540-41 (6th Cir. 1999) and *Crooker v. United*

*States*, 814 F.2d 75, 77-78 (3rd Cir. 1987) (noting that some federal courts interpreting the IAD have concluded that incarceration in a local facility awaiting transfer to a correctional facility does not implicate the IAD).

Lastly, [petitioner] did not suffer a violation of the anti-shuttling provision when he was sent to the Bureau of Prisons in July of 2013, because he consented to that transfer. By consenting to the transfer, [petitioner] acted in a manner contrary to the IAD, and thus waived his protection under the anti-shuttling provision of the IAD. State v. Vinson, 182 S.W.3d 709, 712-14 (Mo. App. E.D. 2006).

The stipulation of the parties regarding the timeline of [petitioner]'s custody and case status shows that the State filed an IAD Form V with federal officials, requesting temporary custody of defendant, on August 29, 2013. The stipulation then shows "warrant and detainer issued" on this same date. The trial court concluded that the provisions of Article IV of the IAD were not triggered until the State lodged this detainer. We agree. We deny this point.

(*Id*. at 4-5) (footnotes omitted.)  Upon reviewing at post-conviction appeal whether trial counsel gave ineffective assistance regarding IAD, the Circuit Court directly relied on the Missouri Court of Appeals' findings in their rejection of petitioner's PCR claim, stating:

[Petitioner] claims his attorney was ineffective for failing to properly litigate and present evidence of a claimed violation of the Interstate Agreement on Detainers (IAD). [Petitioner]'s claim appears to be based on his contention that he was transferred from federal to state custody pursuant to a warrant in January 2012 that federal officials treated as a detainer.

The Court finds this claim is without merit. This Court listened to arguments on the issue and the Court entered a written decision denying movant's IAD claim. The Court of Appeals specifically said in its Memorandum Supplementing Order in movant's appeal the warrant pursuant to which movant's custody was transferred did not constitute a detainer. In addition, the Court of Appeals said that "even if the warrant constituted a detainer, defendant still cannot invoke the protections of the IAD as he wishes."

(Doc. 10-18 at 8.) The Missouri Court of Appeals upheld the Circuit Court's holding that petitioner had no basis for his claim that the trial court erred in its original decision regarding the IAD.

The Circuit Court, in its denial of petitioner's PCR post-conviction appeal,

14

followed the Court of Appeals' view expressed in its opinion denying petitioner's direct appeal, that the warrant by which petitioner's custody was transferred was not a detainer under the IAD. Petitioner now restates his claim of ineffective assistance of counsel, via Ground Two of his habeas corpus petition. Ground Two of petitioner's claim states petitioner was deprived of his right to effective assistance of counsel because counsel failed to adequately stipulate a number of facts regarding his claim that his rights under the IAD were violated.

Under *Strickland*, for a claim of ineffective assistance of counsel to be meritorious, it requires both that counsel's conduct fell below some objective standard of reasonableness and but for counsel's improper conduct there is a reasonable probability the proceedings would have had a different outcome. Therefore, in order for petitioner to have a successful claim of ineffective assistance of counsel, he must establish how, if his trial counsel had adduced the aforementioned facts, there is a substantial certainty the proceedings would have had a different outcome.

Petitioner argues that if trial counsel had properly presented his claim under the IAD, with the asserted facts, his indictment would have been dismissed. (Doc. 1 at 7.) Petitioner argues that trial counsel failed to establish the following facts: (1) that the United States Marshals Service believed the warrant from the state trial court to be a detainer; (2) the transfer of petitioner from custody in St. Louis County to St. Louis City jail by St. Louis city homicide detectives was unusual and demonstrated assertion of custody by the state; (3) petitioner's status as a federal prisoner in St. Louis City jail after federal sentencing was the consequence of the federal government honoring the state warrant as a detainer; (4) except in the presence of a detainer, the common practice of the Marshals Service was to transfer federal prisons from a local jail to the custody of the federal Bureau of Prisons following the conclusion of federal prosecution; and (5) petitioner remained a federal prisoner in state custody for more than 120 days after the detainer had been filed against him. (Doc. 19 at 25-26.)

Even if these facts had been established by trial counsel, the outcome of petitioner's claim regarding his rights under the IAD would have been the same. The

assertion that trial counsel failed to show (1) that the United States Marshals Service considered the warrant to be a detainer is not of any consequence to petitioner's IAD claim. The Missouri Court of Appeals did not rely on the United States Marshals Service's beliefs regarding the warrant in holding no detainer had been filed. Instead, they held there was no detainer because "[t]he IAD expressly requires the filing of a detainer. Mere notice or knowledge of a warrant, by itself, does not constitute a detainer." (Doc. 10-13 at 4) (citations omitted.) The court based their holding on the lack of any formal detainer being filed; how the Marshals Service interpreted the warrant was irrelevant to the Court of Appeals holding.

This interpretation of the IAD was subsequently endorsed by the Circuit Court in its ruling on petitioner's PCR claim of ineffective assistance of counsel on the grounds petitioner's counsel failed to properly argue claims regarding the IAD. Therefore, it is unlikely that trial counsel's failure to adduce facts relating to the United States Marshals Service's perception of the warrant had a prejudicial effect on the outcome of the original proceedings regarding the IAD. In short, the Circuit Court's original holding regarding the IAD was not based on how the Marshal Service viewed the warrant against petitioner, thus facts regarding the perception of this warrant are immaterial to petitioner's IAD claim.

Facts (2), (3), and (4) are all similarly irrelevant to the disposition of petitioner's IAD claim, and thus fail to meet the standard under *Strickland* for ineffective counsel. The Missouri Court of Appeals did not rely on assumptions contrary to the facts petitioner alleges trial counsel was ineffective for failing to adduce. The Circuit Court ruled that no formal detainer had been filed, so petitioner was not entitled to the protections of the IAD. Even if trial counsel adduced facts (2), (3), and (4) the outcome of petitioner's IAD claim would have been the same. Therefore, petitioner suffered no prejudice from trial counsel's failure to adduce these facts.

Fact (5) is immaterial to the disposition of petitioner's IAD claim as well. When the Missouri Court of Appeals denied petitioner's claim that his rights under the IAD had been violated, they acknowledged that petitioner had been detained for approximately a

16

year in state custody, before returning to federal custody. (Doc. 10-13 at 3.) Although petitioner was in state custody for over 120 days, the Missouri Court of Appeals determined there had been no violation of the IAD. The court determined that petitioner entered state custody on June 6, 2012, pursuant to a warrant issued on January 26, 2012. The warrant by which petitioner was transferred from federal to state custody did not constitute a detainer because a detainer document must be expressly filed, and the warrant did not constitute an express filing of a detainer. (*Id* at 4.) The incarceration in state custody for over 120 days did not contravene the IAD, because the court determined that no detainer had ever been filed against petitioner. Therefore, trial counsel's failure to show that petitioner was in state custody for over 120 days was non-prejudicial.

The Missouri Court of Appeals' holding that no detainer had been filed against petitioner, and thus petitioner could not rely on the protections of the IAD, would not have been altered had trial counsel adduced any of the aforementioned facts. The Court of Appeals concluded that no detainer had been filed on the grounds that there was no express legal order filed that constituted a detainer. The Court of Appeals makes clear that a warrant itself does not constitute a detainer for the purposes of the IAD. The Circuit Court followed this ruling of the Court of Appeals.  Therefore, trial counsel's alleged failure to adduce certain facts regarding the IAD did not prejudice the outcome of petitioner's trial. Petitioner fails to meet the burden set forth in *Strickland* by failing to establish how he was prejudiced by trial counsel's omissions. The state courts' decisions on this ground were reasonable applications of federal law based upon a clearly established factual record.

Accordingly, Ground Two is without merit.

### Ground Three

In Ground Three, petitioner argues that he was deprived of his rights to equal protection and due process of law when the trial court found that no detainer occurred prior to trial and denied petitioner's motion to dismiss the charges against him for violation of the IAD.

In support of his claim that the trial court incorrectly denied his claim under the IAD, petitioner states the following stipulated facts agreed upon by petitioner's trial counsel and prosecution:

> • On January 26, 2012, while [petitioner] was in federal custody in St. Louis County, a warrant was issued and served and, at the request of St. Louis city police, he was transferred from the federal holdover in St. Louis County to the St. Louis city jail.
> • [Petitioner] was released to state authorities on June 6, 2012, after he had been sentenced in federal court.
> • [Petitioner] remained in state custody for 377 days, until he was transferred back to federal custody on June 18, 2013.

(Doc. 1 at 9-10.) Petitioner appealed the trial court's rejection of his IAD claim in his direct appeal to the Missouri Court of Appeals. The Missouri Court of Appeals affirmed the trial court's denial of petitioner's IAD claim. (Doc. 10-13 at 4-5.)

AEDPA states that in order for habeas relief to be granted, a state court's decision must have been contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)-(2).

Petitioner states several facts that he believes, if they were properly adduced by trial counsel, would have made his IAD claim successful, because the facts would have established that a detainer had been filed against him. As discussed in the analysis of Ground Two, these facts were immaterial the disposition of petitioner's IAD claim.

In Ground Three petitioner claims that the trial court incorrectly decided his IAD claim by finding no detainer had been filed. In support of his claim petitioner states:

> Under the IAD, a "detainer" is "a notice filed with the confining institution that criminal charges from another jurisdiction [are] outstanding and that the prisoner [is] wanted in order to stand trial on those charges." *Esola v. Groomes*, 520 F.2d 830, 838 (3rd Cir. 1975).

(Doc. 1 at 9.)

Petitioner does not adequately demonstrate that the trial court's definition of a detainer contravened federal law or the interpretation of the United States Supreme Court in either his petition for a writ of habeas corpus or his traverse. The state courts' decisions on this ground were reasonable applications of federal law based upon a clearly established factual record.

Therefore, Ground Three is without merit.

## Ground Four

In Ground Four, petitioner argues that he was deprived of his rights to due process, fair trial, and an impartial jury when the trial court denied petitioner's request for a trial separate from that of his co-defendants. Petitioner argues that the failure to grant the request for separate trial violates the Supreme Court's holding that "prevailing notions of fundamental fairness ... require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).

Petitioner argues that the jury was affected by testimony heard about co-defendant Spates that incriminated petitioner, and he felt compelled to refrain from testifying in order to avoid being subject to cross-examination from his own previous attorney, as co-defendant Moss's counsel had previously represented petitioner.

Upon direct appeal, the Missouri Court of Appeals made the following findings regarding decisions to sever petitioner for a trial separate from the other defendants:

> The decision to sever a joint trial lies within the sound discretion of the trial court. *State v. Isa*, 850 S.W.2d 876, 885 (Mo. banc 1993). We will disturb that ruling only if the trial court abused its discretion and the defendant suffered clear prejudice. *Id.*; *State v. Kidd*, 990 S.W.2d 166, 182 (Mo. App. W.D. 1999).
>
> Rule 24.06 and Section 545.880.2 RSMo. govern the propriety and procedure of severing joint trials. *Kidd*, 990 S.W.2d at 182. Rule 24.06 states that co-defendants must be tried separately only if the court finds the probability of prejudice exists or if one of four incidences appears, three of which are relevant here. *Id.*; *Isa*, 850 S.W.2d at 884-85. The rule requires separate trials if "there is, or may reasonably be expected to be material and

19

substantial evidence not admissible against the defendant that would be admissible against other defendants if a separate trial is not ordered. Rule 24.06(b)(2). The rule also requires separate trials if "an out- of-court statement that is not admissible against the defendant ... would be admissible against other defendants if a separate trial is ordered unless the court finds the out-of-court statement can be limited by eliminating any reference to the defendant. Rule 24.06(b)(3). And the rule requires a separate trial if one is "necessary to a fair determination of whether the defendant is guilty." Rule 24.06(b)(4). Like Rule 24.06, Section 545.880.2 mandates separate trials only when the trial court finds the "probability for prejudice" exists in a joint trial. *Isa*, 850 S.W.2d at 885; *Kidd*, 990 S.W.2d at 182.

Missouri courts traditionally favor joint trials. *Isa*, 850 S.W.2d at 885; *State v. Denzmore*, 436 S.W.3d 635, 640 (Mo. App. E.D. 2014). Joint trials play a vital role in the criminal justice system and serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability. *Id*. Severance is not required when a less drastic course, such as the provision of proper jury instructions, will prevent prejudice to the defendant. *Id.*; *Kidd*, 990 S.W.2d at 182. On appeal, the defendant bears the burden of affirmatively showing that the joint trial prejudiced his right to a fair trial. *Denzmore*, 436 S.W.3d at 640; *Kidd*, 990 S.W.2d at 182.

(Doc 10-13 at 5-7) (footnotes omitted). Later, the Court of Appeals made the following conclusion on this ground or relief:

> [Petitioner] failed to carry his burden. He first contends the trial court should have severed the trials because evidence admitted at the joint trial would have been inadmissible against him in a separate trial, namely "snitch" testimony from Davonta Gomillia regarding Mr. Spates's admissions. [Petitioner]did not further specify the purportedly objectionable testimony. In his argument, he simply referenced "an out-of-court statement of Spates which referenced [petitioner] but was inadmissible against him was admitted at trial." [Petitioner] did not provide citations to the record for the complained-of testimony, in violation of Rules 30.06(e) and 84.04(e). Those rules require specific page references to the relevant portion of the record on appeal for all factual assertions made in the argument portion of an appellant's brief. Rules 30.06(e) and 84.04(e). [Petitioner] referenced his argument in a previous point. This is insufficient. We are still left to wonder what statements defendant is relying on when he calls for severance. Is it all? Some? One in particular? Moreover, [petitioner] did not identify the purportedly offensive testimony or provide citations to the record in that point either. It is not for this Court to comb through the entire record, searching for the claimed error or the factual basis supporting that claim. *State v. Hardin*, 229 S.W.3d 211, 215 (Mo. App. W.D. 2007). [Petitioner] is

20

required to identify the challenged evidence or ruling, and support his argument with specific citations to the record. Failure to do so renders [petitioner]'s point unpreserved. *Morales v. State*, 323 S.W.3d 466, 470 (Mo. App. E.D. 2010)(holding issue not preserved for appellate review where appellant failed to provide specific page references in legal file or transcript); *State v. Ward*, 622 S.W.2d 354, 356 (Mo. App. E.D. 1983)(holding point not preserved where appellant failed to identify what specific evidence was objectionable). When such references are lacking, we are effectively thrust into the role of being defendant's advocate, which is a role we cannot assume. *Pattie v. French Quarter Resorts*, 213 S.W.3d 237, 240 (Mo. App. S.D. 2007).

[Petitioner] also failed to develop his argument. Indeed, his argument on this portion of his claim consists of a mere six lines of conclusions. He does not discuss why any complained- of evidence was inadmissible. He does not explain why the admission of the complained-of evidence was prejudicial. He does not explain why the evidence necessitated severance. He cited no legal authority, other than the general statute and rule governing severance. He does not discuss how the law and facts interact, calling for severance in this case. We are left to speculate. To review this claim, this Court must comb the record, assume facts, and craft defendant's argument. In short, we must become defendant's advocate. This the Court cannot and will not do. *Hardin*, 229 S.W.3d at 215 (dismissing case where court would have to reconstruct facts, and refine [petitioner]'s points and legal argument). By failing to develop his claim, we may consider his point abandoned. *State v. Nunley*, 341 S.W.3d 611, 623 (Mo. banc 2011).

The State asserts that the purportedly offending testimony is on pages 1550-51 of the transcript, from the direct examination of Davonta Gomillia. Review of this portion of the transcript clearly demonstrates that relief is not called for. Critically, the trial court explicitly instructed the jury not to consider the evidence against defendant. The court's instruction, patterned after approved instruction 310.15, instructed the jury that the statements from Mr. Gomillia could only be considered against Mr. Spates. MAI-CR 3d 310.15. We presume that jurors follow the court's instructions. *State v. Barton*, 240 S.W.3d 693, 703 (Mo. banc 2007). [Petitioner] has not alleged or shown otherwise, other than summarily stating that a limiting instruction was insufficient. He does not point to anything specifically about the nature of the evidence to explain why the jury was rendered so incapable of comprehending and following the court's instruction. We find the instruction sufficient to keep the jury from considering the evidence against defendant.

[Petitioner]'s argument about mutually-antagonistic defenses also fails. A trial court must sever trials if there are co-defendants with mutually antagonistic defenses. *State v. Oliver*, 791 S.W.2d 782, 786 (Mo. App. E.D. 1990); *Kidd*, 990 S.W.2d at 182. But, this doctrine is limited. *Id.* The

21

defendant must show that he and his co-defendant presented conflicting and irreconcilable defenses, and that there is a danger that the jury unjustifiably inferred that the conflict alone demonstrated that both defendants are guilty. *Id*. And here, defendant failed to make such a showing.  [Petitioner]'s defense at trial was that no evidence existed linking him to the victim or her murder except for the unbelievable and biased testimony of Mr. Clemons and Mr. Gomillia.  Mr. Moss's defense was that nothing connected him to the victim's murder except for the unbelievable and biased testimony of Mr. Clemons.  These two defenses are fully consistent with one another. Accepting one defense would not preclude the acquittal of the other defendant. [Petitioner] admits in his brief that his trial defense was consistent with that of Mr. Moss.

Lastly, [petitioner] argues that severance was required because he had previously been represented by Mr. Moss's attorney.  This argument also fails.  [Petitioner] did not preserve this claim for appeal, as he failed to include it in his motion for new trial.  Rule 29.11(d).  The purpose of a motion for new trial "is to allow the trial court the opportunity to reflect on its action during the trial."  *State v. Bartlik,* 363 S.W.3d 388, 391 (Mo. App. E.D. 2012).  "It is a time honored fundamental principle of appellate procedure that a trial court must be given an opportunity to review and correct its own errors before the aid of an appellate court can justly be involved.["]  *Id*. (internal quotation omitted).  The motion "allows a judge to correct his or her own errors without the delay, or expense, or other hardships of an appeal."  *Id.* (internal quotation omitted).  "A trial court is far better able to judge whether the trial has been fair than is the court that reviews the record."  *Id*. (internal quotation omitted).  To preserve an allegation of error for appellate review, defendant must have included it in his motion for new trial.  *Id*.  We decline review.

[Petitioner] failed to show that he was prejudiced by the joint trial.  We deny this point.

(*Id*. at 7-10.) (footnotes omitted.)

The Missouri Court of Appeals denied relief to petitioner on this ground because petitioner was not able to overcome the presumption in favor of joint trials and demonstrate that the jury instructions were insufficient to prevent prejudice towards him from the jury. Petitioner first argues that the trial court should have granted his request to sever trials because a joint trial admitted evidence that would have been inadmissible in a separate trial; namely, the "snitch" testimony from Davonta Gomillia regarding statements made by co-defendant Spates. The court rejected petitioner's claim and found

the instruction to keep the jury from considering this testimony against petitioner was sufficient. The court rejected petitioner's second argument, that his trial should have been severed because of mutually antagonistic defenses with a co-defendant.  Instead, it found that the two defenses were consistent with each other and did not reach the level of irreconcilability necessary to sever defendants for separate trials. Lastly, the court rejected petitioner's claim that trials should be severed due to having previously been represented by co-defendant Moss's attorney due to petitioner's failure to preserve this claim for appeal in his motion for new trial.

The state courts' denials of relief on this ground were not contrary to federal law. Accordingly, Ground Four is without merit.

## Ground Five

In Ground Five, petitioner argues that he was deprived of his rights to a fair trial, to confront witnesses against him, and to due process of law in violation of the Sixth and Fourteenth Amendments when the trial court overruled defense counsel's objection to the testimony of Mr. Gomillia regarding out-of-court statements made by Mr. Spates that implicated petitioner in the murder.  Petitioner argues that the admission of Mr. Gomillia's testimony violated the rule articulated in *Bruton v. United States*, 391 U.S. 123 (1968), that the confession of a non-testifying codefendant at a joint trial implicating another defendant is not admissible because the codefendant is not available for cross-examination. While the jury was instructed to rely upon Mr. Gomillia's testimony about the statement only in reaching its verdict regarding Mr. Spates, petitioner contends, under *Bruton*, that this instruction was an inadequate substitute for cross-examination of Mr. Spates.  (Doc. 1 at 12-13.)

Ground Five is not preserved for this Court's review because petitioner failed to comply with Missouri procedural rules.  Specifically, this ground was not included in his motion for a new trial as required by Missouri Rule of Criminal Procedure 29.11(d).  (Doc. 10-13 at 12.)  A state prisoner has not exhausted his state law remedies for a ground alleged in a federal habeas petition if he has not preserved that claim according to state law

23

procedural rules.  *See Coleman*, 501 U.S. at 729-30 (a federal court will not review a question of federal law decided by a state court if the decision of that court rests on a state procedural rule because the procedural ground is independent of the federal question and adequate to support the judgment.) Nevertheless, the Court reviews the merits of his claim.

Because Mr. Spates' statement to Mr. Gomillia incriminating petitioner was not a testimonial statement, petitioner was not entitled to cross-examine Mr. Spates at trial. *Bruton*, which is premised on the rights protected by the Confrontation Clause, does not apply to the non-testimonial statements of Mr. Spates.  It is well-settled that the Confrontation Clause applies exclusively to testimonial statements.  *Crawford v. Washington*, 541 U.S. 36, 51-53 (2004); *Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("[T]he Confrontation Clause has no application to [non-testimonial statements]"); *United States v. Dale*, 614 F.3d 942, 955 (8th Cir. 2010) ("It is now clear that the Confrontation Clause does not apply to non-testimonial statements by an out-of-court defendant"). Further, the rule in *Bruton* that the confession of a non-testifying co-defendant at a joint trial is not admissible applies only to the testimonial statements of the co-defendant.  *Dale*, 614 F.3d at 956.

While the United States Supreme Court has not offered an exhaustive definition of the term "testimonial," it has distinguished the testimonial statements of an accuser who makes a formal statement to government officers from the non-testimonial statements of a person who makes a casual remark to an acquaintance.  *Crawford*, 541 U.S. at 51. Statements taken by police officers in the course of an interrogation are testimonial.  *Id.* at 52.  Conversely, statements made unwittingly to a government informant and statements from one prisoner to another are clearly nontestimonial.  *Davis v. Washington*, 547 U.S. 813, 825 (2006).  In general, statements are testimonial when made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.  *See Crawford*, 541 U.S. at 52.

Here, Mr. Spates' statements to Mr. Gomillia are nontestimonial.  Those statements were informal and made to an acquaintance, rather than to a government officer.  Moreover, Mr. Spates and Mr. Gomillia took precautions against their conversation being overheard

24

when they removed the batteries from their cellphones and stepped into another room.  An objectively reasonable witness would not believe that statements made in the course of a conversation with an acquaintance which was purposefully conducted in secret would later be available for use at trial.

Accordingly, Ground Five is without merit.

**Ground Six**

In Ground Six, petitioner argues that he was deprived of his right to confront and cross-examine adverse witnesses as well as his rights to due process and a fair trial in violation of the Sixth and Fourteenth Amendments when the trial court did not allow defense counsel to cross-examine Mr. Clemons regarding an incident in which he had thrown a woman out of a moving vehicle.  He claims that the trial court's ruling prevented him from impeaching the credibility of Mr. Clemons, the principal witness in the prosecution's case against him.  (Doc. 1 at 14-15.) Petitioner raised this claim in his direct appeal to the Missouri Court of Appeals which ruled this claim without merit.

Upon direct appeal, the Missouri Court of Appeals stated the following regarding petitioner's claim that the Circuit Court improperly limited the cross examination of Mr. Clemons:

> During direct examination, Mr. Clemons testified that he felt that cooperating with the State was "the right thing to do."  He said that seeing pictures of the victim "touched him," and explained that in the streets, there were certain things that were not "okay to do."  He then specifically stated: "I mean, if you got problems in the streets with guys, you handle your business with them; but, like, as far as women, I don't – I mean, it ain't none of my thing. Kids and all that type of stuff, it ain't my thing.  That's probably what touched me.  I ain't – that ain't– it just ain't part of my – what I – how I get down."  The prosecutor then asked him: "So no women, no kids?" Mr. Clemons responded: "No."
>
> During cross-examination, defense counsel sought to introduce evidence that Mr. Clemons had allegedly thrown a woman, the mother of his child, out of a moving vehicle.  Mr. Clemons was arrested, but not charged with a crime for that incident. Defense counsel urged that this evidence was admissible and relevant to challenge Mr. Clemons's credibility and his stated reason for testifying – notably, that he was opposed to acts of violence against

25

women.

(Doc. 10-13 at 19). The Court of Appeals continued:

Generally, the credibility of a witness is always a relevant issue. *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010). And impeachment provides a tool to test a witness's credibility. *Id.* The most commonly recognized methods of impeaching a witness are: (1) admission of evidence showing the witness's incapacity or problems with perception or memory; (2) admission of evidence of prior convictions; (3) admission of evidence of the witness's bias, interest, or prejudice; (4) admission of evidence of prior inconsistent statements of the witness; and (5) admission of evidence of the witness's character for truthfulness or veracity. *Id.; State v. Austin*, 411 S.W.3d 284, 289 (Mo. App. E.D. 2013). However, the trial court may, in its discretion, limit the admission of this evidence if the prejudicial value of the evidence outweighs its probative value. *Austin*, 411 S.W.3d at 289; *Mitchell*, 313 S.W.3d at 679. "We give trial judges wide latitude to impose reasonable limits on cross-examination to avoid prejudice, confusion of the issues, and interrogation that is only marginally relevant." *Austin*, 411 S.W.3d at 289 (internal quotation omitted).

The trial court was well within its discretion in precluding the sought-after cross- examination. The evidence had the potential to mislead the jury. The alleged conduct of Mr. Clemons was not a prior conviction and did not go to his character for truthfulness and veracity. *See State v. Zahn*, 823 S.W.2d 18, 22 (Mo. App. E.D. 1991) (no error in allowing cross-examination on whether defendant had perjured himself under oath); *Mitchell*, 313 S.W.3d at 679 (false answer in interrogatory). Nor did the sought-after evidence fall within any of the other categories of evidence allowed for impeachment. Rather, the nature of the proposed evidence would impeach Mr. Clemons based on his general moral character, which is not permitted. *Mitchell*, 313 S.W.3d at 677. Moreover, [petitioner] suffered no prejudice, because the sought-after evidence about hurting a specific woman was cumulative to other testimony Mr. Clemons gave. Mr. Clemons testified that he had hurt a woman, and then twice confirmed that statement. He also admitted that he had made prior statements about manipulating women – conning them, and "messing with" them to get them to do things for him. This testimony fully provided [petitioner] a basis to impeach Mr. Clemons. Where excluded evidence is cumulative to other properly-admitted evidence, it could not have contributed to conviction and thus the exclusion of that evidence is harmless beyond a reasonable doubt. *State v. Lloyd*, 205 S.W.3d 893, 903-04 (Mo. App. S.D. 2006).

26

[Petitioner] also argues that the trial court's prohibition constituted a violation of the Confrontation Clause. [Petitioner] is incorrect. The Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *State v. Perry*, 275 S.W.3d 237, 244 (Mo. banc 2009)(quoting *United States v. Owens*, 484 U.S. 554, 557 (1988)); *State v. Fitzpatrick*, 193 S.W.3d 280, 290 (Mo. App. W.D. 2006). The Confrontation Clause is not implicated where the witness is available for cross-examination, as Mr. Clemons was. *State v. Harding*, 323 S.W.3d 810, 817 (Mo. App. W.D. 2010); *Perry*, 275 S.W.3d at 243-44. We deny this point.

(*Id.* at 19-21).

In *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), the Court held that in order to establish a violation of the Confrontation Clause under the Sixth Amendment, a defendant must establish that but for the limitation on cross-examination, a reasonable jury would have received a "significantly different impression" of the witness's credibility. *Van Arsdall,* 475 U.S. at 680. Here respondent argues that a reasonable jury would not have received Mr. Clemons' testimony any differently, even if petitioner had been able to cross-examine him as desired. In petitioner's case, counsel was able to get Mr. Clemons to admit under cross-examination to hurting a woman, conning women, and "messing with women." (Doc. 10-2 at 1339, 1342.) Mr. Clemons' genuine care for the safety and wellbeing of women, something petitioner wished to call into question with further cross-examination, had already had doubt cast upon it by Mr. Clemons' other testimony regarding his treatment of women.

Therefore, the state courts' decisions regarding the cross-examination of Mr. Clemons were a reasonable applicational of established federal law to a well-established factual record.

Accordingly, Ground Six is without merit.

## Ground Seven

In Ground Seven, petitioner argues that he was deprived of his right to be free from compulsory self-incrimination as well as his rights to due process and a fair trial in violation

of the Fifth and Fourteenth Amendments when the trial court did not declare a mistrial or provide the jury with a remedial instruction after the prosecuting attorney commented to the jury during her closing argument on petitioner's decision not to testify.  (Doc. 1 at 15-16.)  At trial, Darryl Clemons testified about a conversation that involved petitioner making statements.   In his closing argument, trial counsel for petitioner argued strongly that Clemons's testimony should not be believed.  (Doc. 10-3 at 91-96.)  In reply, the prosecutor focused on Clemons's relationship with petitioner and the others on trial as a basis for the credibility of his trial testimony thus:

> Darryl Clemons is not an angel.  He is not my associate.  He is not Mr. Martin's associate.  He is Donald White's associate and there is no dispute about that.  No one ever claimed that they didn't know each other.  And there's no dispute that he is Christopher Spates's associate.  Men who plan a woman's murder are not going to have associates unlike Mr. Clemons.  Men like Leon Moss and Donald White and Christopher Spates are not going to talk about planning a murder in front of someone like the Reverend McCullough or Father French.  They're going to talk about it in front of somebody like Darryl Clemons.

(*Id.* at 96-97.)

On direct appeal the Court of Appeals made the following statement on this ground:

> Defendant alleges the trial court plainly erred in failing to strike the comments of the prosecutor, order a new trial, or properly instruct the jury when the prosecutor in her closing argument referred to defendant's failure to deny that he was an associate of Darryl Clemons. Defendant contends the following comment violated his right not to testify:  "Darryl Clemons is not an angel …. He is [petitioner]'s associate and there is no dispute about that. No one ever claimed that they didn't know each other."

(Doc 10-13 at 22-23.) The Court of Appeals continued:

> Defendant correctly acknowledges that he did not preserve his claim of error for appellate review.  He did not object to the comment when made at trial, and he did not include the claim in his motion for new trial.  *State v. Walters*, 363 S.W.3d 371, 376 (Mo. App. E.D. 2012); Rule 29.11(d).  His claim is subject only to plain-error review, at our discretion.  *State v. Clemmons*, 753 S.W.2d 901, 907-08 (Mo. banc 1988); Rule 30.20.
> We rarely grant relief on claims of plain error concerning unobjected

closing argument. *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992). This is because "in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *Clemmons*, 753 S.W.2d at 907-08. "The defendant's failure to object to an improper argument is often strategic, and uninvited intervention may emphasize the matter in a way the defendant chose not to." *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016).

Defendant contends the prosecutor commented on his failure to testify. Defendant is correct that the State may not, either directly or indirectly, comment on a defendant's failure to testify. *Davis v. State*, 453 S.W.3d 882, 886 (Mo. App. E.D. 2015); *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000); Section 546.270; Rule 27.05(a). But, in most cases even a direct comment on a defendant's failure to testify, although erroneous, is not enough to justify a finding of plain error. *Walters*, 363 S.W.3d at 376. Prejudice from such comments can normally be cured by an instruction to the jury. *Id.*; *Kempker*, 824 S.W.2d at 911. By failing to object, defendant denied the judge the opportunity to avoid prejudice by means of an instruction and thereby restricted his right to raise this issue as error on appeal. *Walters*, 363 S.W.3d at 376; *see also Kempker*, 824 S.W.2d at 911 (failure to object fatal to defendant's claim). We deny this point.

(*Id.* at 24-25.)

In *Griffin v. California*, 380 U.S. 609 (1965), the Supreme Court held that a direct comment by a prosecutor on a defendant's failure to testify runs afoul of the Fifth Amendment and its protections against self-incrimination. In addition, prosecutors may not indirectly comment on defendant's failure to testify if they "manifest the prosecutor's intent to call attention to a defendant's failure to testify or would be naturally and necessarily taken by a jury as a comment on the defendant's failure to testify." *Graham v. Dormire*, 212 F.3d 437, 439 (8th Cir. 2000). The standard of review upon a petition for habeas corpus is whether a prosecutor's improper comment had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, (1946)).

Petitioner alleges in Ground Seven that the prosecution made an indirect comment on his failure to testify by stating, "Darryl Clemons is not an angel …. He is [petitioner]'s

associate and there is no dispute about that. No one ever claimed that they didn't know each other." Therefore, the appropriate standard, as stated in *Graham*, is whether the prosecutor's intent when making this statement was to call attention to petitioner's failure to testify and was considered as such by the jury.

The intent of the prosecutor in petitioner's case is reasonably clear: to respond to the argument that Clemons's testimony was not worthy of belief, by highlighting the relationship between Clemons and petitioner, not to highlight the fact that petitioner did not testify in his own defense.

When the prosecutor makes indirect comments that arguably could be considered as calling attention to a defendant's failure to testify, the Eighth Circuit has stated that a jury instruction reminding the jury that the defendant has a right not to testify is a sufficient safeguard of Fifth Amendment rights. *See Robinson v. Crist*, 278 F.3d 862, 866 (8th Cir. 2002) (holding that a jury instruction about a defendant's privilege to not testify may not cure prosecution's direct comment or more blatant indirect comment regarding a defendant's failure to testify but can help cure some indirect comments made by prosecution regarding the defendant's failure to testify). The jury in petitioner's case was given an instruction that petitioner had the right not to testify. (Doc. 10-3 at 19; trans. p. 1652.)

Petitioner argues that the intent of the prosecutor was to demonstrate that petitioner was an associate of Mr. Clemons, and that petitioner is the only one who could dispute this relationship. (Doc. 1 at 16.) This is distinct from the prosecutor calling attention to petitioner's failure to testify. Petitioner admits that the purpose of the comment was to call attention to the relationship between Mr. Clemons and himself, not that the purpose of the comment was to bring to the jury's attention petitioner's failure to testify.

Even if one were to assume that the prosecutor's intent was to call attention to petitioner's failure to testify, petitioner does not address how the jury perceived such a comment. The jury's perception of prosecutor's comment is the second prong of the indirect comment test laid forth in *Graham*, and petitioner made no attempt to address it in his habeas petition or his traverse. The plain reading of the prosecutor's comment does

not obviously suggest that jurors would perceive the prosecutor's intent as being to call attention to petitioner's failure to testify. The prosecutor stated that, "no one ever claimed otherwise," in reference to Mr. Clemons and petitioner being associates. This comment came during the prosecutor's closing argument. At this point the jury had heard several days of testimony from 11 witnesses.  A more reasonable interpretation of the comment is that in the course of examination of witnesses who did testify, at no point did any of them suggest that Mr. Clemons and petitioner were not associates.

Ground Seven fails on both grounds of the *Graham* test, as petitioner failed to demonstrate that the prosecutor's intent was to call attention to his failure to testify and that the jury perceived it as such. Therefore, continuing to the "substantial and injurious effect or influence" test set forth in *Kotteakos* is not necessary. However, even if one assumes that petitioner's claim meets the *Graham* standard, petitioner fails to demonstrate how the comment had any sort of injurious effect or influence on the jury's decision. Given the length of the trial, the significant witness testimony, and the brevity of the prosecutor's comment, it is not reasonably likely that the comment had a substantial impact on the jury's decision.

Accordingly, Ground Seven is without merit.

### Ground Eight

In Ground Eight, petitioner argues that he was deprived of his rights to confront and cross-examine adverse witnesses and to present a defense, as well as his rights to due process and a fair trial in violation of the Sixth and Fourteenth Amendments, when the trial court did not allow defense counsel access to federal investigation files concerning Mr. Clemons and probation files concerning Mr. Gomillia.

Petitioner argued in his direct appeal of his conviction that the trial court improperly refused to allow defense counsel access to federal investigation files concerning Clemons and probation files concerning Gomillia. (Doc. 1 at 16-17.) The Court of Appeals stated the following about access to federal investigation files concerning Clemons:

Regarding the federal documents concerning Darryl Clemons, we

have also reviewed those documents, at defendant's request.  The sought-after records are from an ongoing, multi- state federal criminal investigation. The records concern numerous individuals and multiple crimes over the span of several decades, all unrelated to this case.  The trial court perfectly characterized the records as a "cornucopia of – from the '90s to the present of dope, money and gun wars in the metropolitan area as it extends outward from people who send dope and money into the St. Louis area."  The current crime – the murder of Ms. Young – is mentioned only tangentially. Defendant's name is included in the records, as being charged with first-degree murder and awaiting trial in the present case.  We discerned no exculpatory evidence.

Defendant desired access to these federal materials, to review them for impeachment purposes.  But Mr. Clemons was impeached without the sought-after materials.  Mr. Clemons was repeatedly examined about the federal investigation.  He was challenged with a possible motive to lie to further his own interests.  He was challenged about his inconsistencies.  The jury was told that Mr. Clemons cooperated with the federal authorities in their investigation, and that he received immunity from prosecution for his involvement in drug-trafficking and weapons offenses in exchange for that cooperation and his testimony at trial.

(Doc 10-13 at 11.) The Court of Appeals rejected petitioner's claim, stating:

The trial court twice reviewed the federal materials, and concluded that the information contained therein was "a morass, a swamp that we don't want to go into."  The court astutely observed that they were trying a murder case in state court, not a federal RICO drug-murder case.  We conclude that the federal materials were neither favorable nor material, and that risk of prejudice and confusion from collateral matters greatly outweighed whatever minimal probative value they had.  The trial court did not abuse its discretion in denying access to the records.  We deny this point.

(*Id.* at 11-12.) The Court of Appeals also rejected petitioner's claim regarding Mr.

Gomillia's probation records, stating:

Regarding Mr. Gomillia's probation file, defendant asked the trial court to review the probation records, specifically to see if the files contained any evidence of an agreement between the State and Mr. Gomillia. The trial court found none.  We also reviewed the records and agree with the trial court's conclusion.  We deny this portion of defendant's point.

(*Id.* at 10-11). In order to find a due process violation based on suppression of evidence

by prosecution, it must be demonstrated that: (1) the evidence is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the state; and (3) the defendant suffered prejudice. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

In *Keating v. Missouri*, 643 F.2d 1315, 1319 (8th Cir. 1981), the Eighth Circuit discussed what constituted impeaching evidence. The court held that since it was shown that a key witness was unreliable because of a history of drug abuse, mental health issues, past issues with law enforcement, past instances in which she had served as a witness for the state in criminal trials, and a number of other issues that called into question her credibility as a witness, additional evidence of an agreement between the prosecutor and the witness would have little to no effect on the outcome of the trial.  *Keating*, 643 F.2d at 1319.

If petitioner sought the records regarding the federal investigation into Mr. Clemons for purposes of impeachment, like the petitioner in *Keating*, the record shows that petitioner White and his co-defendants had significant other material regarding Mr. Clemons' unreliability as a witness. Mr. Clemons himself admitted to his frequent use of a variety of drugs; that his use of drugs resulted in him blacking out; that some of those drugs were hallucinogenic; that he had a significant criminal history, which involved crimes in which women were the victim, despite claiming he was testifying because he had a code of honor which prevented him from harming women; that he cooperated with federal investigators in a separate matter; and that he had received immunity from federal prosecution for his cooperation. (Doc. 10-2 at 1185, 1273-1277, 1339, 1342.) Petitioner fails to show how additional evidence regarding a federal investigation into Mr. Clemons would further discredit him as witness, thus altering the outcome of the trial. Petitioner cannot establish how he suffered prejudice and therefore fails to meet the burden set forth in *Stickler*.

Petitioner argued in his direct appeal and in his federal habeas petition that he was improperly denied access to Mr. Gomillia's probation file as well. The Court of Appeals affirmed the Circuit Court's decision on grounds that there was no evidence that Mr.

Gomillia had an agreement with the state to have his probation discharged early in exchange for testifying. Petitioner makes no claim as to how such evidence is exculpatory or impeaching, but one can reasonably assume he sought such evidence because he believed it would serve to impeach the testimony of Mr. Gomillia. Both the Circuit Court and Court of Appeals decided to the contrary.

To demonstrate that the state courts made an incorrect finding of fact, petitioner must demonstrate there is clear and convincing evidence that a state court's findings of fact lacked evidentiary support. See 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293. Petitioner fails to go beyond mere allegation. In his petition for a writ of habeas corpus, petitioner can only point to the fact that Mr. Gomillia was detained for a gun related probation violation, at some point his probation officer recommended his probation be ended early, and Mr. Gomillia went on to testify for the prosecution. (Doc. 1 at 17.) Both the Court of Appeals and Circuit Court reviewed the probation files and found no evidence of agreement between the state and Mr. Gomillia. (Doc. 10-13 at 10-11.) This does not suffice to show that the state courts' findings of fact that there was no exculpatory or impeaching evidence in the probation files were incorrect. Petitioner fails to adduce clear and convincing evidence that the state courts' findings of fact lacked evidentiary support.

In short, petitioner does not adequately demonstrate that Mr. Gomillia's probation files had exculpatory or impeaching evidence, nor does petitioner demonstrate that he suffered any prejudice because of the suppression of the probation files of Mr. Gomillia.

Accordingly, Ground Eight is without merit.

## **CONCLUSION**

For the reasons set forth above, the petition of Donald White for a writ of habeas corpus under 28 U.S.C. § 2254 is **denied**.

Petitioner made no substantial showing that he was deprived of a constitutional right. Therefore, a certificate of appealability is denied. 28 U.S.C. § 2253(c)(2).

An appropriate Judgement Order is issued herewith

_____/s/ David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 16, 2022.